UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
CIVIL DIVISION

LISA R. KELLEY AND
SHARON PARKER,

    Plaintiffs,

v.                          CASE NO. 5:13-CV-00451-ACC-PRL

TAXPREP1, INC.,

    Defendant.
_____/

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO CREATE A CONDITIONAL OPT-IN CLASS
AND AUTHORIZE NOTICE TO PUTATIVE CLASS MEMBERS**

**I.**

**PRELIMINARY STATEMENT**

District courts have discretion, "in appropriate cases," to implement the Fair Labor Standards Act's ("FLSA") collective action mechanism by facilitating notice to potential plaintiffs. *Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165, 169 (1989). The *Hoffman* Court instructed that this mechanism should be employed only in cases involving "common issues of law and fact arising from the same alleged . . . activity," such that resolution of common issues in one proceeding would promote efficiency and judicial economy. *Id*. at 170.

The Eleventh Circuit has suggested[1] that district courts use a "two-tiered approach" to determine whether certification of a collective class is warranted. *Hipp v. Liberty Nat'l Life*

---

[1] In *Hipp*, the Eleventh Circuit noted that "[n]othing in our precedent, however, requires district courts to utilize [the two-tiered] approach." *Hipp*, 252 F.3d at 1219. District courts have broad discretion to determine the appropriate procedures for creating an opt-in class. *Id.* In some instances, alternative procedures may be more efficient than the two-tiered approach. *See, e.g., Rogers v. KAR Holdings, Inc.*, Case No. 8:08-cv-00602 (M.D. Fla. Sep. 5, 2008) (ordering limited discovery on the exempt status of the plaintiffs and deferring ruling on plaintiffs' motion for conditional certification).

*Ins. Co.,* 252 F.3d 1208, 1217 (11th Cir. 2001). At the initial stage, Plaintiffs must demonstrate that: (1) there are other employees who desire to opt in to the litigation; and (2) these other employees are similarly situated with respect to their job requirements and their pay provisions. *Dybach v. State of Fla. Dep't of Corr.,* 942 F.2d 1562, 1567-68 (11th Cir. 1991). To make the requisite showings, a plaintiff must offer "detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Grayson v. K-Mart Corp.,* 79 F.3d 1086, 1097 (11th Cir. 1996).

Where the party opposing conditional certification presents evidence refuting or undermining the plaintiffs' allegations, district courts frequently conduct a more thorough examination of the allegations as part of the conditional certification analysis. *See, e.g. Tyler v. Payless Shoe Source, Inc.,* 2005 WL 3133763, at *6 (M.D. Ala. Nov. 23, 2005) (applying heightened examination where the parties submitted competing affidavits on the issue of whether the putative class members were similarly situated); *Holt v. Rite Aid Corp.,* 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (it is "appropriate to carefully consider the submissions of the parties with respect to the collective action allegations," where "the court has been presented with fairly extensive evidence on the issue of whether putative class members are similarly situated").

In any event, regardless of whether the Court utilizes a traditional "first-tier" analysis or a more rigorous one, the Court still must determine whether this case can be appropriately treated as a collective action. As one court put it, "neither the remedial purposes of the FLSA, nor the interests of judicial economy, would be advanced if [the court] were to overlook facts which generally suggest that a collective action is improper." *West v. Border*

*Foods, Inc.,* 2006 WL 1892527, at *7 (D. Minn. July 10, 2006); *see also Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) ("[i]t would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated"); *Basco v. Wal-Mart Stores, Inc.,* 2004 WL 1497709, at *5 (E.D. La. July 2, 2004) ("[t]o create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for same prior to its certification would be an exercise in futility and wasted resources for all parties involved").

In this case, the Plaintiffs have not met – and cannot meet – their burden under the *Dybach* test. Plaintiffs have proposed a collective action on behalf of all "Office Managers" currently or formerly employed by Defendant during the statutory limitations period who worked more than forty hours per workweek and were not paid overtime. Plaintiffs claim that they, and all other Office Managers, were misclassified as exempt salaried employees. However, Plaintiffs' claims are not representative of the class of "Office Managers," as demonstrated by the affidavits submitted purportedly in support of Plaintiffs' Motion for Certification, as well as the attached declarations submitted by Defendant. These sworn statements show that conditional certification is not appropriate because each Office Manager operated a different office location with varying responsibilities depending on the size of the location and the number of employees the Office Manager supervised. The determination of whether each Office Manager was properly classified as exempt under the executive exemption, set forth at 29 C.F.R. § 541.100, will thus require an individualized analysis of that particular Office Manager's primary duty, the number of employees the

Office Manager supervised, and whether the Office Manager had the requisite hiring and firing authority.  The net effect of these dissimilarities is that conditional certification would undermine, rather than promote, the collective action objectives of efficiency and judicial economy.  Accordingly, Plaintiffs' Motion for Conditional Certification of Collective Action and Permission to Send Court Supervised Notice Advising Similarly Situated Individuals of Their Opt In Rights Pursuant to 29 U.S.C. § 216(b) ("Plaintiffs' Motion for Certification") should be denied.

## II.

## BACKGROUND

### A. TaxPrep1's Operations and Office Managers

Plaintiffs Lisa Kelley ("Kelley") and Sharon Parker ("Parker") were formerly employed as Office Managers by Defendant TaxPrep1. [Declaration of Craig Forness, ¶ 4 ("Forness at ¶_")].  TaxPrep1 is a franchisee of Jackson-Hewitt, Inc.  [Forness at ¶ 3]. TaxPrep1 is a tax preparation company primarily concentrating on preparing personal income tax returns.  [*Id.*].  TaxPrep1 employs approximately 250 people in 88 locations within thirteen counties—Citrus, Hardee, Hernando, Highlands, Lake, Manatee, Marion, Orange, Osceola, Polk, Sarasota, Seminole, and Sumter.  [Forness at ¶ 5]. Most—but not all—of TaxPrep1's locations are managed by an Office Manager.  [Forness at ¶ 6].  Each Office Manager reports directly to an Area Manager or to General Manager Craig Forness. [*Id.*].

Kelley worked as an Office Manager in TaxPrep1's kiosk located in the Bushnell Walmart at 2163 West C-48, Bushnell, Florida 33513.  [Forness at ¶ 7].  She held this

position on a seasonal basis during the 2011, 2012, and 2013 tax seasons. [*Id.*]. The tax season runs from mid-January through April of each year. [*Id.*]. For the 2013 tax season, Ms. Kelley's supervisor was Area Manager Shawn Crawford. [*Id.*]. Parker worked as an Office Manager in TaxPrep1's storefront at 3810 Gulf to Lake Highway, Inverness, Florida 34453. [Forness at ¶ 8]. She held this position on a seasonal basis during the 2011, 2012, and 2013 tax seasons. [*Id.*]. For the 2013 tax season, Ms. Parker's supervisor was Area Manager Ed Redrow. [*Id.*].

TaxPrep1's Office Managers are each assigned one or more locations for which they are responsible. Specifically, TaxPrep1's Office Managers are responsible for all aspects of their assigned location including, among other things, (i) managing all day-to-day operations of their assigned location(s); (ii) holding the keys to the location and opening and closing the location each day; (iii) daily bookkeeping for each location, including deposits; (iv) supervising the employees assigned to the location, and disciplining and/or recommending discipline as appropriate; (v) ensuring a high level of customer service and customer satisfaction; (vi) maintaining the cleanliness and organization of the location; (vii) ensuring confidential taxpayer information is safeguarded; (viii) approving the employees' time sheets; (ix) preparing employee schedules and properly staffing the location; and (x) engaging in local marketing activities. [Forness at ¶ 9, Declaration of Sandra Ramos, ¶ 4 ("Ramos at ¶ _"); Declaration of Robert DeSormier, ¶ 5 ("DeSormier at ¶ _"); Declaration of Joanne Muskopf, ¶ 4 ("Muskopf at ¶ _"); Declaration of Nettie Smith, ¶ 4 ("Smith at ¶ _"); Declaration of Maxine Rivers, ¶ 4 ("Rivers at ¶ _"); Declaration of Melissa Monroe, ¶ 4 ("Monroe at ¶ _")].

Some Office Managers have hiring and firing authority, while others effectively recommend hiring and firing decisions, and their recommendations are given great weight by their supervisors. [Forness at ¶ 9; Ramos at ¶ 6; DeSormier at ¶ 6; Muskopf at ¶ 6; Smith at ¶ 6; Rivers at ¶ 6; Monroe at ¶ 6]. In performing their duties, Office Managers operate independently and exercise a significant amount of discretion and decision-making, especially with respect to managing their employees, handling customer service issues, preparing schedules, operating the location, managing discounts, and local marketing. [Forness at ¶ 9; Ramos at ¶ 4; DeSormier at ¶ 5; Muskopf at ¶ 4; Smith at ¶ 4; Rivers at ¶ 4; Monroe at ¶ 4].

Office Managers' duties also vary depending on the size and type of the location. [Forness at ¶ 10]. Larger, busier locations have additional operational and scheduling needs, while smaller, less busy locations require minimal staffing and operations. [*Id.*]. Some locations only have one employee, while other locations have as many as eleven employees during the tax season. [Forness at ¶ 10; Ramos at ¶ 6; DeSormier at ¶ 6; Muskopf at ¶ 6; Smith at ¶ 6; Rivers at ¶ 6; Monroe at ¶ 6]. Additionally, some Office Managers manage multiple locations, while some Office Managers manage only a single location. [Ramos at ¶ 4; DeSormier at ¶ 4; Muskopf at ¶ 4; Smith at ¶ 4; Rivers at ¶ 4; Monroe at ¶ 4].

Some of TaxPrep1's locations are permanent storefronts, while others are kiosks that are set up seasonally in Walmart stores. [Forness at ¶ 11]. Some locations open year round, while other locations are only open seasonally. [Forness at ¶ 11; DeSormier at ¶ 5]. TaxPrep1 employs most Office Managers only during the tax season, while some Office Managers are employed during the entire calendar year. [Forness at ¶ 11; Ramos at ¶ 3;

Muskopf at ¶ 3; Smith at ¶ 3; Rivers at ¶ 3; Monroe at ¶ 3]. During 2011, 2012, and 2013, Office Managers were paid a set salary each week. [Forness at ¶ 12; Ramos at ¶ 7; DeSormier at ¶ 7; Muskopf at ¶ 7; Smith at ¶ 7; Rivers at ¶ 7; Monroe at ¶ 7]. They received the same salary each full week they worked. [Forness at ¶ 12; Ramos at ¶ 7; DeSormier at ¶ 7; Muskopf at ¶ 7; Smith at ¶ 7; Rivers at ¶ 7; Monroe at ¶ 7].

### B. Plaintiffs' Complaint and Motion for Certification

Plaintiffs filed their Complaint on August 19, 2013, claiming that Defendant misclassified them, and all other Office Managers, as salaried employees exempt from overtime compensation. Initially, Plaintiffs alleged they were misclassified because their primary duty was not management. [D.E. 1, ¶ 6].

Plaintiffs filed their Motion for Certification on January 10, 2014. [D.E. 28]. In it, they allege, in broad, conclusory terms devoid of detail, that conditional certification is warranted because Kelley and Parker had job duties similar to other Office Managers and thus were similarly situated. [D.E. 28 ¶ 2]. Plaintiffs provide no analysis of their own job duties, nor do they even explain how they believe they were misclassified, *i.e.*, which part or parts of the executive exemption test they purportedly did not meet. Rather, they simply attach cookie-cutter affidavits from the named Plaintiffs and *just two* other Office Managers. [D.E. 28]. In their affidavits, the named Plaintiffs state that they did not manage other employees, that their job duties included "secretarial tasks," and that their pay was prorated.[2]

---

[2] Plaintiffs claim their pay was prorated if they did not work a full week; however, Plaintiffs have not provided further detail on these alleged prorations, and thus their relevance is indeterminable from the face of the pleadings. [D.E. 28, pp. 10-11]. Prorating an employee's salary does not necessarily mean the employee was not paid on a salary basis as required by Section 13(a)(1). *See* 29 C.F.R. 541.602 (setting forth permissible deductions from a salaried employee's pay). For example,

[D.E. 28, pp. 10-11]. The affidavit of Shirley Austin ("Austin") replicates Plaintiffs' cookie cutter affidavits. [D.E. 28, p. 9]. However, the affidavit from the other Office Manager – Ralph DeDonato ("DeDonato") – does not make the same allegations. Rather, DeDonato's affidavit states his pay was prorated, that he did not have "hiring and firing abilities," and that his job duties included "secretarial tasks." [D.E. 28, p. 8].

### C. Defendant's Declarations in Opposition to Plaintiffs' Motion for Certification

Attached to this motion are the Declarations of TaxPrep1's General Manager, Craig Forness, and six Office Managers who clearly had very different jobs than the named Plaintiffs. [*See* Exhibits A-G, attached]. These Office Managers all confirm that they were properly classified as exempt from the FLSA's overtime requirements pursuant to the executive exemption: they were paid a set salary; their primary duty was management; they supervised at least two or more employees; and they either had authority to hire and fire or their recommendations as to personnel decisions are given great weight. [*See* Exhibit B-G]; *see also* 29 C.F.R. § 541.100 (setting forth the "General Rule for Executive Employees").

### III.
### ARGUMENT

A. **Plaintiffs Cannot Establish That the Putative Collective Action Members Are Similarly Situated**

For this action to proceed as a collective action, the Plaintiffs bear the burden of showing that the members of the purported class are "similarly situated" to them. *Grayson,* 79 F.3d at 1096. "[T]he burden is on the plaintiffs to make an evidentiary showing that they

---

proration is permissible during the initial and terminal weeks of employment under 29 C.F.R. 541.602(b)(6).

and the proposed class are similarly situated, not on the defendants to disprove such similarity." *Reed v. Mobile County Sch. Sys.,* 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003). Moreover, "a showing that employees are 'similarly situated' entails more than just a matching of job responsibilities. The requirement that proposed class members be 'similarly situated' to the named plaintiffs ensures that the collective action promotes the 'efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity.'" *Hunter v. Spring Corp.,* 346 F. Supp. 2d 113, 119 (D.D.C. 2004) (*quoting Hoffman-LaRoche,* 493 U.S. at 170).

The FLSA does not define what it means to be "similarly situated" for purposes of conditional certification. A commonly referenced standard is the three-factor test first articulated in *Lusardi v. Xerox Corp.,* 118 F.R.D. 351, 359 (D.N.J. 1987), that considers: (1) the extent to which the employment settings of employees are similar or disparate; (2) the extent to which any defenses that an employer might have are common or individualized; and (3) general fairness and procedural considerations. *See Pendlebury v. Starbucks Coffee Co.,* 518 F. Supp. 2d 1345, 1349 (S.D. Fla. 2007).

1.  **Plaintiffs' conclusory assertions that other workers are similarly situated are insufficient to satisfy their burden.**

A plaintiff must make "substantial" and "detailed" allegations supported by affidavits to satisfy the "similarly situated" *Dybach* prong. *Grayson,* 79 F.3d at 1097. Federal courts have repeatedly declined collective action certification where plaintiffs' assertions are conclusory or lack an evidentiary foundation. *See, e.g. Haynes v. Singer,* 696 F.2d 884, 887 (11th Cir. 1983); *Ulysse v. Divosta Bldg. Corp.,* 2006 WL 3618449, at *2 (S.D. Fla. Dec. 7, 2006) (plaintiff's "affidavit is not probative of the similarly situated question as it merely

offers conclusory allegations and self-serving personal beliefs about purported claims of identified third parties"); *Trinh v. JP Morgan Chase & Co.,* 2008 WL 1860161, at *4 (S.D. Cal. Apr. 22, 2008) ("[p]laintiffs provide no real evidence, beyond their speculative beliefs, suggesting that all JP Morgan loan officers . . . receive the same compensation and are required to work in the same manner"); *Mares v. Caesars Entertainment, Inc.,* 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007) ("[u]nsupported allegations are insufficient to establish that the putative plaintiffs are similarly situated").

Plaintiffs' four cut-and-paste, form affidavits attached to their Motion for Conditional Certification are insufficient to satisfy their burden. First, the affidavits are not even consistent as to the reasons for Plaintiffs' purported misclassification claim, nor does Plaintiffs' Motion for Certification offer any explanation in this regard. As noted above, DeDonato's affidavit is significantly different from the affidavits of the named Plaintiffs and Austin. Second, DeDonato's affidavit does not even establish, on its face, that he was misclassified. Third, the statements in the affidavits lack any context and are simply conclusory assertions without detailed allegations. Because these statements are conclusory and provide no meaningful details, they, therefore, fall far short of the "substantial" and "detailed" allegations needed to satisfy the "similarly situated" *Dybach* prong. *See, e.g. Hampshire v. Port Arthur Indep. Sch. Dist.,* 2006 U.S. Dist. LEXIS 88874 (E.D. Tex. Dec. 7, 2006) ("the nearly identical statements in the affidavits that affiants have personal knowledge of other potential plaintiffs who are similarly situated are insufficient for the court to find that such plaintiffs exist").

If such conclusory assertions could lead to conditional class certification and court authorized notice, the "similarly situated" requirement would be rendered essentially meaningless. "[F]ederal courts across the Middle and Southern Districts of Florida have routinely denied requests for conditional certification where, as here, the plaintiffs attempt to certify a broad class based only on the conclusory allegations of a few employees." *Rappaport v. Embarq Mgmt. Co.,* 2007 WL 4482581, at *2 (M.D. Fla. Dec. 18, 2007). *See also Gomez v. United Forming, Inc.*, 2009 WL 3367165, at *2 (M.D. Fla. Oct. 15, 2009); *Cartner v. Hewitt Assoc., LLC*, 2009 WL 3245482, at *2 (M.D. Fla. Oct. 07, 2009) ("[p]laintiffs must offer some evidence, other than the conclusory statements in their affidavits, that they are similarly situated to the employees whom they seek to represent"); *Biondolillo v. Daytona Beach Kennel Club, Inc*., 2009 WL 2563475, at *3 (M.D. Fla. Aug. 18, 2009) (denying certification where "Biondolillo's allegations that there are other similarly situated individuals that would like to join the lawsuit are speculative, vague, and conclusory").

Indeed, commentators have noted that approving an individual employee's request to give notice based on such weak affidavits subverts the goals of collective actions and subjects employers to needless expense and blackmail suits. *See* James M. Fraser, *Opt-in Class Actions Under the FLSA, EPA, and ADEA: What Does It Mean To Be "Similarly Situated?,"* 38 SUFFOLK U.L. REV. 95, 120 (2004) ("[w]hen courts apply less stringent certification standards to § 216(b) actions, employers are often subject to the expense of needless discovery and are more likely to be faced with blackmail suits").

> 2. **The potential class members are not similarly situated because an individualized analysis is required to determine whether each purported class member is subject to the executive exemption.**

Defendants maintain that most of its Office Managers are exempt from FLSA overtime requirements under the "executive exemption" set forth at 29 C.F.R. § 541.100. However, under the circumstances of this case, the application of the executive exemption requires an individualized inquiry regarding each class member's claim. Therefore, Plaintiffs' claims are singularly unsuitable for collective action treatment.

> a. **General principles regarding application of the executive exemption.**

The executive exemption is applicable to certain executive employees who are paid on a salary basis. *See* 29 C.F.R. § 541.100. In relevant part, the executive exemption provides:

> (a) The term "employee employed in a bona fide executive capacity" in section 13(a)(1) of the Act shall mean any employee:
>
> (1) Compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

*Id*. To be entitled to the exemption, an employer must satisfy all four of the above requirements.

### b. Individualized inquiries regarding whether Office Managers meet all aspects of the executive exemption will predominate.

Plaintiffs' own affidavits submitted in support of their Motion for Certification demonstrate that individual inquiries will predominate in determining the applicability of the executive exemption in this case. As noted above, Plaintiffs and Austin offer different reasons for their purported misclassification than those offered by DeDonato. Moreover, DeDonato's affidavit does not even allege facts which tend to show he was misclassified as exempt. Although DeDonato claims he did not have "hiring and firing abilities," he does not allege that his recommendations regarding hiring and firing were not accorded particular weight. [D.E. 28, p. 8, ¶ 7]. Thus, he cannot allege on this basis alone that he was misclassified pursuant to Section 541.100(a)(4). Similarly, although DeDonato alleges that his duties "included … secretarial tasks," he does not claim that this is an exclusive list of his duties or even that these were his primary duties. [D.E. 28, p.8, ¶ 8]. Again, this allegation in DeDonato's affidavit alone is insufficient to establish misclassification. The same is true as to DeDonato's statement that his pay was prorated, as an exempt employee's salary may be prorated under certain circumstances without defeating the salary basis test. [D.E. 28, p. 8, ¶ 5].

Moreover, although Plaintiffs have submitted the affidavit of Austin, who apparently claims, like Plaintiffs, that she was misclassified because she did not manage employees and/or because her duties were not primarily managerial, Defendant has submitted affidavits from *six times* as many Office Managers who completely disagree with Plaintiffs' claims.

These Office Managers all allege they were paid the same salary each week, that their primary duty was management of their assigned office or office(s), that they supervised at least two or more employees – and up to as many as eight employees, and that they had the requisite hiring and firing authority or that their recommendations were given the requisite weight. Thus, all of these Office Managers appear to have been properly classified as exempt executive employees under 29 C.F.R. § 541.100.

### 3. The individualized inquiries required would make this case unmanageable and defeat the purpose of collective action treatment.

Plaintiffs have made no effort to show the extent to which the proposed class members will rely on common evidence at trial. Nor could they make such a showing. The dissimilar positions and the individualized proof required by the executive exemption under the circumstances of this case would not allow the issues in this case to be resolved through representational evidence, making the case tantamount to conducting multiple trials on the merits, which is the antithesis of a collective action. *See Trinh v. JP Morgan Chase & Co.,* 2008 U.S. Dist. LEXIS 33016 (S.D. Cal. Apr. 22, 2008) (refusing to certify a collective action in the absence of common evidence); *Holt v. Rite Aid Corp., supra* at 1272 (denying collective action to store managers and assistant store managers due to an inability to use representational proof).

The disparate facts and issues addressed above defeat Plaintiffs' conclusory allegations that putative class members are similarly situated, and thus would render certification unmanageable. *See Diaz, supra* (denying certification where "significant differences are apparent at the outset and discovery cannot resolve the defects in plaintiffs'

claims"); *Morisky*, 111 F. Supp. 2d at 499 ("litigating this case as a collective action would be anything but efficient . . . The individual nature of the inquiry required makes collective treatment improper in this case").

Collective action treatment of Plaintiffs' claims would not meet the Supreme Court's announced objective of limiting the controversy to one proceeding that efficiently resolves common issues of law and fact. *Hoffman-La Roche v. Sperling,* 493 U.S. at 170. Moreover, Plaintiffs' requested collective action proceedings would be burdensome to a jury. *Thiessen v. General Electric Capital Corp.,* 267 F.2d 1095, 1105 (10th Cir. 2001) (collective action "impos[ed] extraordinary burdens on the jury, both in terms of quality of evidence and length of trial"). Finally, because the Plaintiffs' claims are not amenable to generalized evidence, the Court would not be able to coherently manage the class without potentially prejudicing the parties.

B.  **Insufficient Showing of Potential Class-Members Who Desire to Opt-In**

As held in *Dybach,* 942 F.2d at 1567-1568, a district court, in considering whether to give notice to opt-in to potential class members of an alleged FLSA class, "should satisfy itself that there are other employees of the department-employer who desire to "opt-in" and who are "similarly situated." In *Santielices v. Cable Wiring, Inc.,* 6 WH Cases 2d 1852 (S.D. Fla. 1999), the court, following *Dybach*, rejected plaintiffs' argument that the way to prove existence of other similarly-situated employees who want to opt-in was pursuant to notice and opportunity to opt-in. The court concluded that the existence of similarly-situated others who desire to opt-in must be proved "beforehand," and that, under *Dybach,* plaintiffs must proffer evidence that "there are a number of employees who are both similarly situated and

want to opt-in."

Here, Plaintiffs have failed to present any evidence that other individuals wish to join the suit. Neither of the two affidavits submitted by other Office Managers state that they would be interested in joining the lawsuit. In fact, Plaintiffs have not presented any admissible evidence that any other Office Managers wish to join the lawsuit. Rather, Plaintiffs allege in their affidavits, as well as in the affidavit of Ralph DeDonato, that other individuals "may wish to join," but these allegations are patently insufficient. In *Bosch v. Title Max, Inc.,* 2004 U.S. Dist. LEXIS 30162 (N.D. Ala. 2004), the court recognized that out-of-court statements presented as proof of the fact they assert, namely that other employees wish to opt-in, presented inadmissible hearsay problems. The court followed *Davis v. Charoen Pokphand (USA), Inc.,* 303 F. Supp. 2d. 1272 (M.D. Ala. 2004), in rejecting this evidence as insufficient. In *Davis,* the plaintiff testified that she had spoken to at least 12 employees, who stated that they were unhappy with the employer's policies and would join the suit. However, these other employees did not file affidavits or consents, so the testimony was deemed insufficient. Following *Davis,* the court in *Bosch* held that it had no choice but to deny plaintiffs' motion for conditional certification in such circumstances.

Here, likewise, Plaintiffs and DeDonato offer only their speculation that some employees "may wish" to join the suit. These sworn "beliefs" about the desires of others are inadmissible hearsay, and are therefore legally deficient. *See also Rodgers v. CVS Pharmacy,* 2006 WL 752831, *5 (M.D. Fla. Mar. 23, 2006) ("plaintiff's or counsel's belief in the existence of other employees who desire to opt in and 'unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify' certification

of a collective action and notice to a potential class" (quoting *Mackenzie v. Kindred Hosps. East, L.L.C.,* 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003)).

In short, Plaintiffs have submitted four nearly identical, conclusory affidavits – two of which are from the named Plaintiffs, one of which mirrors the named Plaintiffs' claims identically, and one of which is essentially irrelevant because it does not even facially support Plaintiffs' claims of misclassification – but offer no evidence that additional individuals desire to opt in to the action. As a result, Plaintiffs fall short of satisfying the evidentiary standard for conditional certification, and their motion should be denied.

C. **Improper Proposed Notice**

Plaintiffs request permission to send their proposed notice (Exhibit C to Plaintiffs' Motion for Conditional Certification) to putative class members by mail. However, the proposed notice is improper. For example, the proposed notice portrays the case as a free chance at receiving money. As to Plaintiffs' counsel and their fee, it states they "are being paid on a contingency fee basis, which means that if there is no recovery, there will be no attorneys' fees." However, under Florida Bar Rules, a contingency fee must be in writing and signed and state how the fee is to be determined, including percentages accruing to the attorney. The description in the notice is clearly insufficient and solicits representation without the required safeguards. No fee agreement is attached to the motion.

Accordingly, Defendants respectfully request that, if this Court does allow notice to putative class members, it institute a process by which all parties would have input into the formulation of the notice and the manner in which it would issue. Specifically, in that event, Defendants would ask the Court to direct the parties to confer in an effort to draft a notice in

a mutually agreeable form and, if the parties cannot reach agreement, they may submit their separate proposed drafts of the notice and any positions regarding its manner of issuance to the Court. In this regard, Defendants note that, while Plaintiffs have submitted a proposed notice to this Court in connection with their motion, it would be premature for this Court to rule on the contents of any notice or the manner of issuance, as it has not ruled that notice is even warranted.

### III.
### CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Certification should be denied.

Respectfully submitted,

/s/ Peter W. Zinober
Peter W. Zinober
Florida Bar No. 121750
Email: zinoberp@gtlaw.com
Catherine H. Molloy
Florida Bar No. 033500
Email: molloyk@gtlaw.com
GREENBERG TRAURIG, P.A.
625 E. Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900
Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on February 28, 2014, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Clinton C. Carter
Morris, Cary, Andrews, Talmadge & Driggers LLC
418 Scott Street
Montgomery, AL  36104

Lindsay Maura Ruiz Bash
Grant & Dozier, LLC
123 N. Apopka Avenue
Inverness, FL  34450

Charles Robinson Fawsett
Shutts & Bowen, LLP
300 S. Orange Avenue, Suite 1000
P.O. Box 4956
Orlando, FL  32802-4956

    /s/ Peter W. Zinober
    Attorney

*ORL 298746063v1*